IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

| | |
|---|---|
| ONIN STAFFING, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> LESLIE CARTER and ) <br> WISE STAFFING SERVICES, INC., ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION NO. 1:23CV-58-GNS |

## **VERIFIED COMPLAINT**

Plaintiff Onin Staffing, LLC ("Onin"), through its undersigned counsel, brings the following Verified Complaint against Defendants Leslie Carter ("Carter") and Wise Staffing Services, Inc. ("Wise") (collectively with Carter, "Defendants"). In support of its Verified Complaint, Onin Staffing, LLC alleges as follows:

## **PARTIES**

1. Plaintiff Onin is an Alabama Limited Liability Company with its principal place of business in Birmingham, Jefferson County, Alabama. Onin's three members are Keith Phillips, Hugh Thomas, and David Satterfield. All three are individual citizens of the state of Alabama. Onin is a citizen of the state of Alabama.

2. Defendant Carter is a former Selling Branch Manager of Onin. On information and belief, Carter is an individual resident of Kentucky residing in Warren County and is a citizen of the Commonwealth of Kentucky.

3. Defendant Wise is a staffing company that does business in and around Bowling Green, KY. On information and belief, Wise is a Mississippi corporation with its principal place of business in Lee County, Mississippi and is a citizen of the state of Mississippi. Wise is

registered to do business in the Commonwealth of Kentucky. Its registered agent for service of process is CT Corporation System, 306 West Main Street, Suite 512, Frankfort, KY 40601.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Onin is diverse from both Defendants and the amount in controversy and pecuniary effect of the relief sought exceed the jurisdictional amount of $75,000.

5. Venue is proper because Carter resides in this District and because the events or occurrences giving rise to these claims occurred in this District.

6. This Court has personal jurisdiction over the Defendants.

## FACTUAL ALLEGATIONS

**A.** **Carter' Employment with Onin**

7. Onin is part of The Onin Group, which is a privately-held group of companies based in Birmingham, AL.

8. Onin recruits job candidates and places them with its clients, which are businesses in various types of industries. Onin has branches and services clients throughout the country.

9. In connection with their provision of temporary employees to Onin's various clients, Onin's Selling Branch Managers develop relationships with those clients and become the face of the company with respect to those clients and their needs for temporary staffing.

10. Carter began working for Onin on or about October 26, 2020.

11. In connection with Carter's employment by Onin, she had access to Onin's proprietary and confidential information; she had direct contact with Onin's clients; and she developed a reputation with Onin's clients as one of the faces of Onin in terms of the provision of temporary staffing services.

12. Onin relied on Carter, as one of its representatives, to develop, maintain, and manage Onin's relationships with its clients, including Bluegrass Supply Chain Services, LLC ("Bluegrass").

13. During the majority of her employment with Onin, Carter's territory included approximately the 35-mile radius around Onin's branch in Bowling Green, KY, where Carter worked.

14. During her employment with Onin, Carter managed approximately thirteen (13) clients for Onin, including Bluegrass, among others. Additionally, Carter called on numerous other prospective clients.

15. On or around February 1, 2023, Carter emailed Jaclyn Ward ("Ward") (Onin's Regional Manager), "Do you have time for me to call you today to talk for a few minutes? Please let me know what time is convenient for you."

16. Approximately twenty minutes later, Ward called Carter. During this conversation, Carter informed Ward that she had received a job offer from Wise and that she was considering accepting the opportunity. Ward talked with Carter about the opportunities Carter had moving forward with Onin and Onin's growth strategy moving into the future. Ward also reminded Carter of the Agreement and encouraged her to review the Agreement in depth. Ward explained that she herself waited-out an eighteen-month non-compete agreement earlier in her career prior to returning to the staffing industry.

17. On or about February 6, 2023, during their regularly-scheduled one-on-one meeting, Carter informed Ward that she had decided to remain in her employment with Onin.

18. Then, on or about February 14, 2023, during another call with Ward, Carter informed Ward that she received another job offer from Wise for a "higher-level job" with "more

compensation" than the previous offer. Carter told Ward that she had decided to resign from Onin and take this second job offer from Wise.

19. During this conversation, Ward asked Carter about this "higher-level position," and Carter told her that it was a regional-level position wherein she would oversee multiple Wise branch locations. Ward again reminded Carter of her non-compete and non-solicitation obligations and told her that it was important she understand that she could not solicit any of the clients she supervised or serviced at Onin for the specified time period.

20. Carter assured Ward, "I would never."

21. Carter's last day worked with Onin was March 1, 2023 and she officially resigned her employment effective March 3, 2023.

22. Prior to Carter's resignation, none of Onin's clients that Carter supervised or serviced raised any concerns to Onin regarding Onin's services or sought to alter the terms of their service agreements with Onin.

**B.     The Agreement.**

23. To protect its confidential information, goodwill, and client relationships, Onin requires its employees to agree to reasonably-tailored contractual obligations, including restrictive covenants (*e.g.*, post-employment covenants not to solicit its clients or employees and narrowly-tailored covenants not to compete).

24. Carter accepted and agreed to such obligations and covenants during her employment with Onin.

25. Specifically, on October 26, 2020, in connection with beginning her employment with Onin, Carter signed an Employment, Training, Noncompetition and Confidentiality

Agreement (the "Agreement") containing confidentiality, noncompete, and nonsolicitation provisions. A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

26. With respect to noncompetition and nonsolicitation obligations, the Agreement provides:

> **5. Noncompetition, Confidentiality, Etc.** As part of the consideration for this Agreement, and specifically as consideration for the non competition covenant contained in this Agreement, Company agrees that:
>
> Company will provide training and disclosures to Employee as provided in **Exhibit A**, which are designed to enhance Employee's value in the Temporary Services Business, with respect to aspects of Company's business methods and techniques applicable to Employee's job assignment.
>
> As part of the consideration for this Agreement and to further induce Company to employ or continue to employ Employee as an at-will employee, to disclose Confidential Information to Employee, and to train Employee with respect to its Temporary Services Business (which Employee agrees will benefit Employee), Employee agrees that:
>
> a) **Noncompetition and Confidentiality.** During the time the Employee is employed by Company and for a period of one (1) year after termination of such employment for any reason (the "Noncompete Term"), Employee will not either directly or indirectly, either alone or with others:
>
> i) have any contact for commercial purposes that are competitive with Company with any client serviced or supervised by Employee;
> ii) have any contact for commercial purposes that are competitive with Company with any present or past employee of Company with whom Employee has associated or had contact;
> iii) use or make available to others for use except for the benefit of Company any Confidential Information obtained while an employee of Company or belonging to Company; or
> iv) within a twenty five (25) mile radius of any client location or Company office in which Company is doing business that was serviced or supervised by Employee, seek or take employment with or invest in or engage in any business that is competitive with Company whether as an individual, agent, employee, officer, director, partner, shareholder, investor, principal, consultant or any other capacity. Company agrees that employment by employee in the human resources department of an entity not providing temporary services will not be considered competitive with Company's business.
>
> NOTE: For employees in Oklahoma, Nebraska, or Wisconsin, this Section 5(a) shall be modified and replaced as set forth in Exhibit B hereto.

Agreement, Ex. A, at Section 5.

27. Carter agreed that throughout the duration of her employment with Onin and for one (1) year thereafter (the "Noncompete Term"), she would not, either directly or indirectly, "have any contact for commercial purposes that are competitive with Company with any client serviced or supervised by Employee"; and/or "within a twenty five (25) mile radius of any client location or Company office in which Company is doing business that was serviced or supervised

by Employee, seek or take employment with . . . in any business that is competitive with Company," though specifically excluding "employment . . . in the human resources department of an entity not providing temporary services will not be considered competitive with Company's business." Agreement, Ex. A, at Section 5.

28. In the Agreement, Carter "acknowledged that [Onin] would suffer damages if [she] . . . engaged in a business in competition with [Onin] or disclosed Confidential Information while [she] worked for [Onin] and for a period of years following the termination of [her] employment with [Onin], and [Onin] would not enter into an employment agreement with [her] without [her] agreement not to compete with [Onin] and not to disclose Confidential Information." Agreement, Ex. A, at Recital E.

29. In the Agreement, Carter also agreed to refrain from disclosing Onin's Confidential Information. Specifically, she agreed that, during the Noncompete Term, she would not "use or make available to others for use except for the benefit of Company any Confidential Information obtained while an employee of Company or belonging to Company." Agreement, Ex. A, at Section 5.

30. The Agreement defined Onin's Confidential Information as:

> 6. **Confidential Information Defined.** "Confidential Information" means all formulas, techniques, plans, marketing information, price lists, client backgrounds and evaluations, histories, processes, computer programs, supply resources, lists of clients or prospective employees and any employee's compensation, operating procedures and policies or prospective employees, business development and retention programs, and related trade secrets, know-how, research and development, which are secret or confidential in character and which are used or will be used by Company, its clients or suppliers or their affiliates in their businesses.

Agreement, Ex. A, at Section 6.

31. The Agreement provides for an award of costs and expenses, including reasonable attorneys' fees, in the event Carter breaches its terms. Agreement, Ex. A, at Section 7.

32. The Agreement also provides that any period of violation of the Agreement shall toll and extend the duration of any applicable post-employment restrictions. (*Id.*)

33. Specifically, the Agreement provides:

> **7. Injunctive Relief, Damages, and Attorneys' Fees.** Employee understands and agrees that Company shall suffer irreparable harm in the event that Employee breaches any of Employee's obligations under this Agreement and that monetary damages shall be inadequate to compensate Company for such breach. Accordingly, Employee agrees that, in the event of a breach or threatened breach by Employee of any of the provisions of this Agreement, Company, in addition to and not in limitation of any other rights, remedies or damages available to Company at law or in equity, shall be entitled to a temporary restraining order, preliminary injunction and permanent injunction in order to prevent or to restrain any such breach by Employee, or by any or all of Employee's partners, co-venturers, employers, employees, servants, agents, representatives and any and all persons directly or indirectly acting for, on behalf or with Employee, of any of the provisions of this Agreement, and Company shall be entitled to recover all costs, including reasonable attorneys' fees and expenses, incurred in enforcing or attempting to enforce this Agreement. Employee further agrees that, if Employee violates the restrictive covenants contained in this Agreement, the period during which Employee's obligations in Paragraph 5 will be extended one (1) day for each day in which a violation of such provisions continues. The purpose of this provision is to prevent Employee from profiting from Employee's own wrong if Employee violates such provisions.

(*Id.*)

34. The Agreement also provides that it "shall be governed by, construed, and enforced in accordance with the laws of the State of Alabama, excluding any conflict of law rule or principle that might refer to the governance or the construction of this Agreement to the laws of another jurisdiction. The parties acknowledge that the State of Alabama has a substantial relationship to this Agreement because Company's main office is located in, and Company's operations are directed from, Alabama." (*Id.*, Section 15.)

### C.  Carter and Wise's Wrongful Acts.

35. Wise is a competitor of Onin and also provides temporary employee staffing to employers in and around the Bowling Green area.

36. Wise and Onin compete for business within the Commonwealth of Kentucky, including in and around Bowling Green and the surrounding areas.

37.     Since her resignation from Onin, Carter, on behalf of Wise, has utilized Onin's confidential and proprietary information to solicit Onin's clients that she serviced and/or supervised while employed by Onin.

38.     For example, Bluegrass was an Onin client serviced by Carter during her employment with Onin.

39.     On March 15, 2023, twelve days after Carter's employment with Onin ended, the Director of Human Resources for Bluegrass, Amy Minyard ("Minyard"), sent an email to "lcarter@oninstaffing.com" that read, "Leslie, See attached signed agreement, if you could please sign your part and send back to me for our records. Thanks so much[.]"  A true and correct copy of the email is attached hereto as **Exhibit B**.

40.     The attachment to this March 15 email was an "[a]ddendum to revise terms for hours worked for associates onsite with Bluegrass Supply Chain onsite with Bluegrass Supply Chain[.]" *See* Ex. B.

41.     The attachment also provided:

The below parties mutually understand and agree as follows:

1. All associates referred to Wise/OneSource by Bluegrass Supply Chain will be eligible for hire after 2 weeks worked (80 hours).
2. All associates will be eligible to be hire on with no conversion fee after 480 hours.

Bluegrass Supply Chain
Signature _Amy Minyard_  Director of Human Services
Date _3-15-2023_

Wise Staffing Group
Signature _____
Date _____

*See* Ex. B.

42. This addendum reduced the minimum number of hours Wise employees were required to work to become eligible for hire directly with Bluegrass. The addendum also reduced the minimum number of hours Wise employees were required to work at Bluegrass as Wise employees prior to converting to Bluegrass employees without a conversion fee.

43. A conversion fee is a common provision in staffing agreements whereby the staffing company requires that a client facility pay a certain fee if the client directly hires one of the staffing company's employees to work as its own, permanent employee.

44. This email was clearly intended to go to Carter's new email address at Wise but was accidentally sent to her Onin email address (presumably because of her prior relationship with Bluegrass while employed with Onin).

45. Carter impermissibly utilized Onin's confidential and proprietary information in reaching this addendum with Bluegrass on behalf of Wise, which provided Wise with a competitive advantage with a client Carter previously serviced on behalf of Onin.

46. The next day, by letter dated March 16, 2023, Onin notified Wise (with a copy to Carter) of Carter's noncompete and nonsolicitation obligations contained in the Agreement and placed Wise and Carter on notice that if Carter did not cease violating the Agreement and if Wise did not cease tortiously interfering with Onin's rights under the Agreement, Onin might file suit against Carter and Wise. Onin enclosed a copy of the Agreement with its letter. A true and correct copy of the letter is attached hereto as **Exhibit C**.

47. Carter did not respond to the March 16, 2023 letter.

48. Wise did not respond to the March 16, 2023 letter.

49. Also on March 16, Ward interviewed a job candidate. Ward became aware that this job candidate was a current Wise employee and learned that she directly reported to Carter.

50. Due to concerns over this candidate's own restrictive covenants with Wise, Ward informed the candidate that Onin would not be able to hire her.

51. The job candidate then told Ward that Carter was "struggling with her non-compete compliance."

52. Since Carter's departure from Onin and employment with Wise, Onin's employees have reported changes in communications from Bluegrass. Whereas Onin's contacts at Bluegrass previously replied to inquiries and requests within twenty-four hours, their responsiveness has slowed (and, at times, been nonexistent) since Carter began her employment with Wise.

53. On or about April 19, 2023, a representative of Bluegrass contacted Onin's Bowling Green branch to request a copy of their current staffing agreement with Onin.

54. The next day, Onin's Acting Branch Manager spoke with this Bluegrass representative who informed her that Bluegrass was changing its terms for staffing agreements and seeking to eliminate any partners that were not willing to agree to new terms.

55. Carter's work for the benefit of Wise mirrors the work she did for Onin.

56. Carter's work for the benefit of Wise uses the relationships and skills she developed and cultivated while working with Onin to advance Wise's business interests to the detriment of Onin.

57. Because of Carter's breach of the Agreement, Onin has suffered a loss in its competitive position, goodwill, sales, revenue, and profits.

58. Carter's work for Wise targeted and targets the same clients that she targeted on behalf of Onin.

59. Wise is aware of Carter's former employment by Onin and of the terms the Agreement. Despite Wise's awareness of the Agreement, it has employed Carter and/or allowed her to work for the benefit of Wise in competition with Onin.

60. Despite Wise's awareness of the Agreement between Carter and Onin, it has facilitated, encouraged, or induced her to solicit clients she previously serviced or called on for Onin, in direct competition with Onin, which she has done.

61. Wise's tortious interference with Onin's contractual relationship with Carter has caused material damage to Onin, including a loss of Onin's competitive position, goodwill, sales, revenue, and profits.

## COUNT I – BREACH OF CONTRACT (against Carter)

62. Onin re-alleges and incorporates by reference the preceding paragraphs of this Verified Complaint as if restated fully herein.

63. The Agreement entered into by Carter and Onin is a binding and enforceable contract between them and was supported by valuable consideration.

64. In executing the Agreement, Carter agreed to certain legally binding covenants and obligations to Onin.

65. Carter's work for and/or employment with Wise, which is a competitor of Onin, and the activities she performed and/or performs for the benefit of Wise, violate and materially breach the terms of the Agreement, including the noncompetition and nonsolicitation of clients provisions of the Agreement.

66. Onin fully performed its obligations pursuant to the terms and conditions of the Agreement.

67. As a direct and proximate result of Carter's material and ongoing breaches, Onin has been and will continue to be irreparably injured and has suffered and will continue to suffer financial and other damages.

68. Due to Carter's solicitation of Onin's clients, Onin has been damaged, resulting in a loss of Onin's competitive position, goodwill, sales, revenue, and profits.

69. Onin has no adequate remedy at law for Carter's actions because Carter's material breaches of the Agreement endanger Onin confidential and proprietary information, will undermine Onin's current and prospective relationships with its clients, and the harm Onin has suffered and will suffer as a result of the loss of its competitive position and customer goodwill are incapable of exact proof.

70. Unless Carter is restrained and enjoined, Carter will continue to violate Onin's rights and to ignore the contractual duties Carter owes to Onin.

71. Accordingly, an Order of this Court enjoining and restraining Carter from continuing her conduct in breach of the Agreement is a necessary remedy if Onin is to obtain meaningful relief.

### **COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT (against Wise)**

72. Onin re-alleges and incorporates by reference the preceding paragraphs of this Verified Complaint as if restated fully herein.

73. The Agreement between Carter and Onin is a binding and enforceable contract in which Carter agreed to certain legally binding covenants and obligations to Onin.

74. Wise knows of the Agreement and knows of Carter's obligations thereunder.

75. Wise is not a party to the Agreement.

76. Carter has breached the terms of the Agreement.

77. Wise intentionally, and without privilege or justification, caused Carter's breach of the Agreement.

78. Wise has directed, encouraged, facilitated, allowed, and/or benefitted from Carter's breaches and violations of the Agreement.

79. Wise knowingly has directed, encouraged, facilitated, allowed, and/or benefitted from Carter's breaches and violations of the Agreement.

80. Wise has maliciously directed, encouraged, facilitated, allowed, and/or benefitted from Carter's breaches and violations of the Agreement.

81. Wise has tortiously interfered with contract and/or induced breaches of contact with regard to the Agreement.

82. As a direct and proximate result of Wise's tortious interference and Carter's material and ongoing breaches, Onin has been and will continue to be irreparably injured and also has suffered and will continue to suffer harm, including exposure of its confidential information and trade secrets, as well as financial damages and a loss of competitive position, goodwill, sales, revenue, and profits.

## **RELIEF**

WHEREFORE, Onin respectfully requests:

1. That a Temporary Restraining Order and/or Preliminary Injunction Order issue immediately, enjoining Carter, directly or indirectly, until hearing and thereafter until further Order of this Court:

a. from working for any competitor of Onin in the restricted area defined by the Agreement (including, but not limited to, Wise) during the Noncompete Term, as extended by the Agreement's tolling provision;

b. from having contact for any commercial purposes that are competitive with Onin with any of Onin's customers that Carter serviced or supervised during her employment with Onin;

c. from disclosing or sharing confidential proprietary information of Onin with any other person or entity (including, but not limited to, Wise) as set forth in the Agreement; and

d. requiring Carter to return any and all Onin property, including confidential and proprietary information.

2. That after hearing/trial of this matter, a Permanent Injunction Order issue, granting the same relief as outlined above, for a time period extending for the duration of the Noncompete Term, as extended by the tolling provisions in the Agreement.

3. That this Court enter an order requiring specific performance of Carter's contractual obligations to Onin;

4. That Onin be awarded all of its other damages caused by Defendants' wrongful conduct, including lost profits, attorneys' fees incurred in connection with this action, exemplary and/or punitive damages, and all other available damages; and

5. That Onin be given such other equitable and legal relief as is just and proper under the circumstances.

        Respectfully submitted,

        <u>/s/ E. Kenly Ames</u>
        Charles E. English, Jr.
        E. Kenly Ames
        ENGLISH LUCAS PRIEST & OWSLEY, LLP
        1101 College Street
        Bowling Green, KY 42101
        270-781-6500
        benglish@elpolaw.com
        kames@eplolaw.com

        - and -

        Warren B. Lightfoot, Jr. *(PHV motion to be filed)*
        Brock Phillips *(PHV motion to be filed)*
        MAYNARD NEXSEN PC
        1901 Sixth Avenue North, Suite 1700
        Birmingham, AL  35203
        205-254-1000
        wlightfoot@maynardnexsen.com
        bphilips@maynardnexsen.com

        *Attorneys for Plaintiff Onin Staffing, LLC*

Dated:  April 28, 2023

## VERIFICATION

Jaclyn Ward, pursuant to 28 U.S.C. § 1746, declares and verifies under penalty of perjury the following: I am a Regional Manager of Onin Staffing, LLC, Plaintiff in the above-entitled action, and state that I am authorized to verify the above and foregoing Verified Complaint on behalf of Plaintiff and that the foregoing facts are true and correct to the best of my knowledge, information, and belief.

Executed on April 28th, 2023.

Jaclyn Ward